# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 3:21-CR-00156 (KAD) |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GABRIEL PULLIAM ET AL., | ) | MARCH 29, 2022 |
| *Defendants.* | ) | |

## <u>MEMORANDUM OF DECISION</u>
## RE: MOTION TO SEVER DEFENDANT TAVAUGHN WRIGHT (ECF NO. 214)

Kari A. Dooley, United States District Judge:

Pending before the Court is a motion to sever filed by Defendant Tavaughn Wright ("Defendant" or "Wright") in this multi-defendant prosecution of alleged racketeering and drug conspiracies. Pursuant to Federal Rules of Criminal Procedure 14, as well as the Fifth and Sixth Amendments to the United States Constitution, the Defendant seeks a severance in light of an anticipated impermissible delay and the potential for prejudicial spillover in the case against him, both of which arise because six of his co-defendants are charged with "death eligible" offenses. The Government argues that any determination as to the severance of this or other defendants is premature. The Court agrees.[1] Accordingly, the motion to sever is DENIED without prejudice.

**Discussion**

Rule 14 of the Federal Rules of Criminal Procedure permits severance of properly joined defendants[2], at the discretion of the trial court, to avoid prejudice to a defendant or the government.

---

[1] The motion seeks a severance from the Government's prosecution of the six defendants eligible for the death penalty with whom Wright is joined under the Indictment. Wright is not joined in his motion by any of the other ten defendants who are also not charged with any death eligible offense. Whether Wright seeks to be tried alone or alongside a separate, though unidentified, subset of co-defendants is unclear and further underscores the premature nature of his request.

[2] Defendant Wright does not argue that he was improperly joined with any of his co-defendants.

Fed. R. Crim. P. 14(a). Nevertheless, there is a strong and well-settled preference that defendants who are indicted together should be tried together. *Zafiro v. United States*, 506 U.S. 534, 537 (1993); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003); *see also Richardson v. Marsh*, 481 U.S. 200, 209 (1987) ("Joint trials play a vital role in the criminal justice system[.]"). "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998); *see also United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991). As the Supreme Court has explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand . . . Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson*, 481 U.S. at 210.

A defendant claiming prejudice by joinder must demonstrate prejudice that is "sufficiently severe [as] to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986) (quoting *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984)). District courts have wide discretion in deciding whether to sever trials, and a defendant seeking review of denial of severance under Rule 14 bears an "extremely difficult burden." *United States v. Casamento*, 887 F.2d 1141, 1149–50 (2d Cir. 1989) (internal quotation marks omitted).

In favor of severance, the Defendant advances two principal arguments: (1) that he would face either an unconstitutional or at the very least, unreasonable, delay if he remains joined with death eligible defendants; and (2) that the complexity of the case, including the nature of the charges and the number of defendants, would leave him vulnerable to spillover prejudice. In

response, the Government contends that whether severance is appropriate as to Wright or any other subset of co-defendants cannot and should not be determined at this time.

*Delay*

On September 14, 2021, a grand jury returned the 36-count Indictment in this case charging sixteen defendants with a variety of offenses. Principally, the Indictment charges two overlapping conspiracies—a conspiracy to engage in a pattern of racketeering activity and a conspiracy to distribute and possess with intent to distribute controlled substances. Wright is not charged in the racketeering conspiracy but faces four charges: the narcotics conspiracy and three additional related charges. The racketeering conspiracy or predicate racketeering acts involve at least three murders for which six of the sixteen defendants could be charged with capital offenses. The allegations in the Indictment span nearly two and a half years between October 2017 and February 2020.

Since the first scheduling conference on October 28, 2021, it has been clear that the discovery in this case is extremely voluminous and requires ample time to produce and review by all parties. Indeed, the Court has appointed an attorney discovery coordinator who is working with the Government and defense counsel to streamline the discovery, or at the very least, provide efficiencies to the process. The process is made more difficult by the fact that many defendants are detained and the facilities at which they are held each have their own practices and procedures for affording pretrial detainees access to discovery. Based largely on these concerns, jury selection is presently scheduled for March 2023.[3]

---

[3] The jury selection date was selected taking into consideration availability of all counsel and scheduling conflicts. And based on the discussions, notwithstanding objections by Defendants Wright and Jaivaun McKnight, the Court excluded time under the Speedy Trial Act from October 28, 2021 through jury selection on March 7, 2023. In addition, during the case scheduling conferences, while there was discussion regarding the ongoing mitigation investigations with respect to the potential capital cases, the scheduling has not been driven by the need to accommodate the mitigation investigations or the Department of Justice death penalty protocols. However, the Court consistently recognized that the delays associated with the potential capital cases could, at some future point in time, implicate the

Notwithstanding, Wright asserts that the delays that will be occasioned by the presence of the potential capital cases warrants a severance.[4] As noted below, at some future date, he might be correct. However, since the filing of the motion to sever, the Office of the Deputy Attorney General issued a memorandum announcing a more streamlined procedure for those cases where the United States Attorney has determined not to seek the death penalty.[5] *See* Gov. Ex. A, ECF No. 223-1. If these procedures are followed and the determination is made quickly that this case will not proceed as a capital case, the joinder of these defendants and charges may not occasion any delay to the current trial schedule. And to the extent that is not the path forward, it is too soon to know, impossible to predict and inappropriate to address at this time.

*Prejudicial Spillover*

Defendant also asserts that he would be unduly prejudiced by a joint trial with his co-defendants, specifically those charged with death eligible crimes, because it would be difficult for a jury to "compartmentalize the evidence against the various defendants in a multi-defendant multi-conspiracy trial, particularly where a majority of the defendants (but not [Wright]), are facing the death penalty." Def. Mot., ECF No. 214 at 3. Specifically, Wright argues there are critical phases of the two conspiracies in which he was not involved, placing him at risk of jurors improperly considering certain evidence against him. Wright further argues that the potential for

rights of the defendants who are not charged with death eligible offenses. As discussed above, that concern may have been largely dissipated.

[4] As a corollary to this argument, Wright argues that his case may be delayed because the discovery materials pertaining to the potential capital charges are likely to be considerably more voluminous than the discovery pertaining to his own drug-related charges. And, that it is likely that much of the Government's case-in-chief evidence regarding the death eligible defendants would be inadmissible at a trial in which only Wright were a defendant. However, the Court agrees with the Government that it is too early to make these determinations. Discovery remains ongoing and until a full assessment of the discovery is undertaken, Wright's concern remains speculative.

[5] "For cases in which the U.S. Attorney or Department component head recommends against seeking the death penalty, the Attorney General's Review Committee for Capital Cases will review the case within 30 days of its submission to the Capital Case Section (CCS). When two or more Committee members agree with the no-seek recommendation, the Committee's vote will constitute the Department's decision not to seek the death penalty. Such cases will no longer require a decision by the Attorney General. This change…significantly reduc[es] the expenditure of time and resources otherwise devoted to the review process for no-seek recommendations." Gov. Ex. A, ECF No. 223-1 at 1.

prejudicial spillover cannot be ameliorated by jury instructions or the Court's other remedial measures, including limiting instructions.[6] In response, the Government avers that the case is not so easily divided into groups of racketeering and drug conspiracy defendants, as many of the defendants are charged in both conspiracies, creating overlapping evidence. The government further asserts that for any potential prejudice, a limiting instruction would suffice.

Although the risk of spillover prejudice among co-defendants can be a basis for severance, "[a] defendant raising a claim of prejudicial spillover bears an extremely heavy burden," particularly where there is a conspiracy charged. *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988). "The typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual or separate trials would avoid that prejudice. *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). Once a defendant is charged as a member of a conspiracy, however, "all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." *Salameh*, 152 F.3d at 111; *e.g.*, *Friedman*, 854 F.2d at 563 (holding that defendant did not suffer prejudicial spillover because "most of the evidence of which he complains would have been admissible against him in a separate trial as acts of co-conspirators in the furtherance of a conspiracy" (internal quotation marks omitted)).

To conduct the analysis necessary to determine whether and to what extent evidence against co-defendants creates a risk of prejudicial spillover as to others, the Court needs to understand the precise nature of the evidence at issue. Here, the discovery process is ongoing. Discovery is voluminous and counsel are at a relatively nascent stage of understanding the nature of the evidence and the extent to which it does, or does not, implicate their respective clients. As

---

[6] Counsel for the Defendant, however, provides no explanation for why this is true.

such, any analysis as to prejudicial spillover is premature. And it is unclear at this juncture whether some of the named defendants will reach a pretrial resolution of their cases, which would also necessarily impact the severance analysis. While it may be that a severance of one or more defendants from other remaining defendants is appropriate, such a determination cannot be made at this juncture and in fact, it would be inefficient to attempt such an analysis at this time.[7] Therefore, the Defendant has not met his heavy burden of demonstrating prejudice.

**Conclusion**

For these reasons, the motion to sever is DENIED without prejudice.

**SO ORDERED** at Bridgeport, Connecticut, this 29th day of March 2022.

  */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[7] Whether severance of certain defendants is appropriate is also often informed by the factual or legal defenses to be asserted by the remaining co-defendants, which again, are unknown at this time.